**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Oscar Williams, | Case No.: 2:12-cv-1913-JAD-NJK |
| Plaintiff, | |
| v. | **Order Granting in Part Defendant's Motion for Summary Judgment [Doc. 35]** |
| Brian Williams, et al., | |
| Defendants. | |

Defendants seek summary judgment on pro se inmate plaintiff Oscar Williams's sole civil-rights claim that he lost his job in the Southern Desert Correctional Center (SDCC) in retaliation for his exercise of his First Amendment right to file a grievance against correctional officer Renee Galvan. The absence of evidence that the warden, assistant warden, and deputy director of the Nevada Department of Corrections (NDOC) personally participated in the alleged retaliation merits summary judgment in favor of these defendants. But the evidence suggesting that Galvan (1) threatened Williams with losing his job should he file a grievance against Galvan and (2) then reported falsely that Williams left his work post without authorization creates genuine issues of fact that preclude summary judgment on Williams's claim against Galvan. Accordingly, I grant the defendants' motion in part; enter summary judgment in favor of Warden Brian Williams, Associate Warden Cheryl Burson, and NDOC Deputy Director Sheryl Foster; but deny the motion as to Officer Galvan.

**Background**

In February 2011, Williams was an inmate at the SDCC in the custody of NDOC. His inmate job was to work in the prison gym. Williams claims that on February 15, 2011, he was on the SDCC law library's call-out list, so he left his post in the gym to gain his law-library access; he remained there until leaving for a pill call more than an hour later.[1]

On his return to the library, Williams was stopped by correctional officer Galvan, who

---

[1] Docs. 35-4 at 11, 48; 35-6 at 10.

1  advised Williams he could not both go on a pill call and enjoy access the law library on the same

2  day, and Galvan indicated he would only allow Williams back into the library to collect his effects.[2]

3  Williams shared Galvan's statements with a library staff member who disputed Galvan's

4  characterization of the policy; she accompanied Williams back into the hallway to explain to Galvan

5  that Williams could, in fact, go on a pill call and access the law library on the same day.[3]  Galvan

6  was not convinced and persisted in ordering Williams out of the library.[4]  Williams claims that he

7  told Galvan he would file a grievance against the officer, and Galvan responded by threatening to put

8  Williams in the "hole" and get him fired from his job at the gym if he pursued the matter any

9  further.[5]

10      Williams filed the grievance.[6]  Days later, he received a Notice of Charges (NOC) that

11  notified Williams that he had lost his job;[7] no reason for the termination was provided.  Days later, in

12  responding to Williams's grievance, Assistant Warden Burson explained that he "should have

13  received an NOC for being out of place": "if you are not on a call out list, you do not go anywhere."[8]

14  Williams challenged his termination up the grievance chain—from Burson to Warden Williams, and

15  ultimately to Deputy Director Foster.[9]  He enlisted the help of the library staff member who

16  confirmed that Williams had, in fact, been on the call-out list and gone to the law library as

17  permitted, and his job was restored by Warden Williams, who acknowledged that "a mistake" had

18

19

20  _____

21      [2] *Id.*

22      [3] Doc. 35-6 at 10.

23      [4] *Id.*

24      [5] Doc. 40 at 20.

25      [6] *Id.*

26      [7] Doc. 35-7 at 2.

27      [8] *Id.* at 12; Doc. 35-6 at 10.

28      [9] Docs. 35-4; 35-5 at 7; 35-6; 40 at 22.

1   been made but "corrected to [Williams's] satisfaction."[10]  The parties do not dispute that, if Williams

2   had been on the library's call-out list, he would have been authorized to leave his job and go to the

3   library.

4       After initial screening of his complaint, Williams was left with a single § 1983 claim against

5   Galvan, Warden Williams, Associate Warden Burson, and NDOC Deputy Director Foster[11] in their

6   individual capacities, theorizing that his job was terminated in retaliation for exercising his First

7   Amendment right to file a grievance.[12]  All defendants now move for summary judgment, arguing

8   that Williams's job loss was not tied to his grievance filing and, regardless, he suffered no

9   cognizable injury.[13]  Williams opposes the motion.[14]  I find this motion appropriate for resolution

10  without oral argument.[15]

11                                          **Discussion**

12  **A.    Summary Judgment Standard**

13      Summary judgment is appropriate when "the pleadings, depositions, answers to

14  interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine

15  issue as to any material fact and that the movant is entitled to judgment as a matter of law."[16]  When

16  considering summary judgment, the court views all facts and draws all inferences in the light most

---

19      [10] Doc. 35-5 at 7.  *See also* Doc. 35-4 at 51 (reflecting, "you were reinstated to the gym on

20  6/15/11"); Doc. 40 at 24, ¶ 12.  Williams's employment was finally terminated in August 2011 for
    being a "disruptive inmate."  Doc. 35-7 at 5.

21      [11] Warden Williams, Associate Warden Burson, and NDOC Deputy Director Foster are

22  collectively referred to as the Supervisor Defendants.

23      [12] Doc. 12.

24      [13] Doc. 35.

25      [14] Doc. 40.

26      [15] L.R. 78-2.  Plaintiff was timely provided with the notice required under *Rand v. Rowland*,
    154 F.3d 952 (9th Cir. 1998) (en banc), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

27  Doc. 36.

28      [16] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. Proc. 56(c)).

favorable to the nonmoving party.[17]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts,"[18] he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[19]  If reasonable minds could differ on the material facts at issue, summary judgment is not appropriate because the purpose of summary judgment is to avoid unnecessary trials when the facts are undisputed.[20]  A party seeking to either support or refute the assertion that a fact is genuinely in dispute must do so with admissible evidence.[21]

**B.     Analysis of Williams's First Amendment Retaliation Claim**

Under 42 U.S.C. § 1983, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."[22]  The First Amendment to the United States Constitution ensures the "right of the people . . . to petition the government for a redress of grievances."[23]  "[P]risoners have a First Amendment right to file prison grievances," and retaliation against an inmate for exercising this right is a constitutional violation.[24]  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action

---

[17] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[18] *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[19] *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[20] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[21] Fed. R. Civ. Proc. 56(c)(1); *Orr*, 285 F.3d at 773.

[22] *Id.*

[23] U.S. Const. amend. I.

[24] *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citation omitted).

Page 4 of 10

1    against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

2    chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably

3    advance a legitimate correctional goal."[25]

4         Defendants challenge Williams's remaining claim on three grounds: (1) none of the

5    Supervisor Defendants took adverse action against him, (2) causation is lacking: he lost his job

6    because he left his post without authorization and received a write-up for it; not in retaliation for

7    filing his grievance against Galvan, and (3) regardless, he sustained no cognizable injury.  To assess

8    these arguments, I review all the admissible evidence the parties offer in their summary-judgment

9    papers.

10        ***1.     The record lacks evidence of retaliatory conduct by the Supervisor Defendants.***

11        There is no respondeat superior liability under § 1983.[26]  A government official will only be

12   held liable in an individual capacity if the plaintiff alleges that "each Government-official defendant,

13   through the official's own individual actions, has violated the Constitution."[27]  A supervisor does not

14   "act" merely by knowing of, and acquiescing in, a subordinate's unconstitutional conduct.[28]  "The

15   plaintiff in a Section 1983 action must allege *some* culpable action or inaction for which a supervisor

16   may be held liable"[29] and must prove a sufficient causal connection exists between the wrongful

17   conduct and the constitutional violation; a claim that a supervisor engaged in a "conspiracy to

18   deprive [plaintiff] of her rights" will not do.[30]

19        The Supervisor Defendants contend that Williams cannot demonstrate that they conspired

20

21   ───────────────

22        [25] *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (citation omitted); *Marques v. Nevada*, 2010 WL 3810073, at *3 (D. Nev. Sept. 21, 2010) (citation omitted).

23        [26] *See Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

24        [27] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1069 (9th Cir. 2012).

25
        [28] *Ashcroft*, 556 U.S. at 676.
26
        [29] *Moss v. United States Secret Serv.*, 675 F.3d 1213, 1231 (9th Cir. 2012) (quotation
27   omitted) (emphasis in original).

28        [30] *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

1   with Galvan to retaliate against this inmate, or that any Supervisor Defendant "personally

2   participated in or directed the constitutional violation, or knew of the violation but failed to prevent

3   it."[31]  The evidentiary record is consistent with their characterization.

4        Williams's theory against Burson is that he "believes Defendant Galvan and or Defendant . . .

5   Burson . . . removed [his] name from the daily call out list from the NDCC/SDCC computer system

6   so that it would appear that [Williams] was in the wrong place."[32]   But there is no evidence that

7   Burson did anything but rely on Galvan's report that Williams was not on the law library call-out

8   list.  Williams himself complained during the grievance process that Galvan "never should have told

9   AWP Burson" that Williams was not on the law library's list, but "had to do that to prove to AWP

10  Burson that [Williams] was in the wrong and then use that to get [him] fired as he said he would do

11  on 2/15/11."[33]  Nothing in the evidentiary record of Burson's handling of Williams's grievance or

12  approving Williams's termination suggests anything but that she proceeded under this mistaken

13  assumption, and Williams's claim that Burson "should have known" about Galvan's alleged

14  falsehood falls short of the "active participation" required for personal liability.  Burson is entitled to

15  summary judgment on Williams's claim against her.

16        The same is true for Warden Williams and Deputy Director Foster.  Williams alleges vaguely

17  that these defendants participated in the process of evaluating his grievances once elevated to level 1

18  (the warden) and level 2 (Foster) and were part of a "conspiracy" to interfere with his grievance

19  process.  These allegations, however, are belied by the warden's fairly prompt reinstatement of

20  Williams to his job and written acknowledgment that a mistake had been made.[34]  Although both the

21  warden and Foster concluded that Galvan did not retaliate against Williams, at best this theory can

22  be characterized as Williams's disagreement with the outcome of his grievance process.  But an

23

24  _____

25        [31] Doc. 35 at 6; 41 at 3.

26        [32] Doc. 13 at 6.

27        [33] Doc. 35-4 at 19.

28        [34] Doc. 35-5 at 7.

1   inmate does not have a right to any particular grievance procedure or result.[35]  Regardless, there is

2   simply no evidence in the record to support the theory that Warden Williams or Deputy Director

3   Foster engaged in any retaliatory action against Williams whatsoever.  These defendants, too, are

4   entitled to summary judgment on Williams's claim against them.

5       Having granted summary judgment in favor of the Supervisor Defendants, I now consider

6   whether summary judgment is also warranted in favor of the final remaining defendant, Officer

7   Galvan.

8       *2.    Whether Galvan caused Williams to lose his job is genuinely disputed.*

9       Williams's theory against Galvan is that the officer expressly threatened that he would get

10  Williams fired from his job if the inmate filed a grievance, and the proof is in the pudding: Williams

11  filed the grievance, and he unceremoniously lost his job.[36]  Defendants counter that Williams's file

12  reflects that he lost his job because he "received the NOC for being out of place,"[37] not in retaliation

13  for filing a grievance.

14      But the record is unsettled on the cause of Williams's job loss.  Although Williams was

15  eventually told he had been terminated because on February 15, 2011, he "attempted to gain entrance

16  into the law library when [he] should have been at work at the gym,"[38] the record also contains

17  evidence that supports Williams's theory.  He attests that he, in fact, never received an NOC for

18  being "out of place" after leaving the gym on February 15, 2011.[39]  Defendants offer no documentary

19

20

_____

21      [35] *See, e.g., Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("[I]nmates lack a separate
    constitutional entitlement to a specific prison grievance procedure.") (*citing Mann v. Adams*, 855
22  F.2d 639, 640 (9th Cir. 1988)); *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005) (an inmate "does
    not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction").
23

24      [36] Doc. 13 at 7.

25      [37] Doc. 35 at 3; 35-6 at 9-10.  To establish this proposition, defendants cite to Exhibit E, a 17-
    page list of grievances, as well as Exhibit F, p. 9-10.  Doc. 35 at 3.  The citation to Exhibit E is
    unduly broad and will not be considered.  Exhibit F, which references a specific and limited page
26  number, is sufficient.

27      [38] Doc. 35-4 at 44.

28      [39] *Id.* at 43, 40 at 24, ¶ 13.

evidence that Williams received an NOC for such an offense.[40] Both Williams and another inmate, Arthur Brewer, attest that when Williams told Galvan he was going to file a grievance, Galvan threatened Williams with a stay in the hole and vowed to get Williams's job taken away.[41] And, although NDOC originally claimed it had no record of Williams's name on the law library's February 15, 2011, call-out list,[42] Williams provided NDOC with evidence from the library that he had, in fact, been on the list, and the warden acknowledged to Williams "a mistake was made."[43]

While a prisoner must commonly show more than a protected activity was followed by an adverse action,[44] "timing can properly be considered as circumstantial evidence of retaliatory intent."[45] Based on the ambiguity in NDOC's call-out-list records, the extremely close proximity between (1) Galvan and Williams's heated exchange, (2) Williams's filing of the grievance, and (3) NDOC's termination of his employment without initial explanation, and the warden's recognition that a mistake was made and corrected, resulting in Williams's job restoration, I find there is a genuine and material dispute whether Galvan caused Williams to lose his job in retaliation for the grievance.

### 3. *Defendants' damages argument misses the mark.*

Finally, defendants argue that Williams's claim fails because he suffered no recoverable damages: he was only out of work for a short time during the pendency of his grievance and "can seek no damages based on the temporary loss of prison employment," and "the Due Process Clause

---

[40] Doc. 40 at 25–26. The NOC he received on February 24, 2011, states as its reason merely "per AWP Burson." Doc. 35-7 at 2. It was not until April 29, 2011, that Burson told Williams he was "terminated effective 3-10-11 because [he] attempted to gain entrance into the law library when [he] should have been working in the gym." Doc. 35-4 at 43.

[41] Doc. 40 at 20, 22. I consider only the factual information contained in these affidavits, not the conclusory statements.

[42] Doc. 35-4 at 48.

[43] Docs. 35-4 at 19, 48, 51; 35-5 at 7; 40 at 22-24.

[44] *Huskey v. City of San Francisco*, 204 F.3d 893, 899 (9th Cir. 2000).

[45] *Pratt v. Rowland*, 65 F.3d 802, 808 (9th Cir. 1995).

1  itself does not grant prisoners a liberty interest in good-time credits."[46]  Defendants cite only the

2  district court decision in *Collins v. Palczewski* as the authority for this proposition.[47]  But the

3  question in *Collins* was whether prison employment is a protected liberty or property interest giving

4  rise to a Due Process claim under the Fourteenth Amendment.  Defendants conflate Fourteenth

5  Amendment liberty and property interests with First Amendment retaliation damages.[48]  Williams is

6  not claiming that he was deprived of rights subject to redress under the Due Process Clause; he

7  contends that Galvan's retaliation against his exercise of First Amendment rights resulted in two

8  types of injury to him: (1) months of lost wages and (2) the inability to earn good-time credits during

9  that time period.[49]  The *Collins* principles, therefore, are not dispositive of Williams's right to the

10 remedies he seeks in this First Amendment retaliation suit.[50]

11                                             **Conclusion**

12        Accordingly, it is HEREBY **ORDERED** that Defendants' Motion for Summary Judgment

13 **[Doc. 35] is GRANTED** in part and **DENIED** in part:

14        •        With good cause appearing and no reason for delay, it is hereby ORDERED,

15                 ADJUDGED and DECREED that **summary judgment is entered in favor of**

16                 **defendants Brian Williams, Cheryl Burson, and Sheryl Foster on the only claim**

17                 **against them**; and

18

19

---

20        [46] Docs. 35 at 6; 41 at 3.

21        [47] *See* Doc. 41 at 3 (citing *Collins v. Palczewski*, 841 F. Supp. 333 (D. Nev. 1993)).

22
         [48] This confusion is further evidenced by their reply citation to *Wolff v. McDonnell* for the
23 proposition that "the Supreme Court has concluded that the Due Process Clause itself does not grant
   prisoners a liberty interest in good-time credits." Doc. 41 at 3 (citing *Wolff v. McDonnell*, 418 U.S.
24 539, 557 (1974)).

25        [49] *See* Doc. 40 at 15.

26        [50] Defendants do not argue that (and I do not *sua sponte* consider whether) Williams legally
   may seek remedies for his alleged loss of earned work-time credits in this § 1983 action in which the
27 warden acknowledged to Williams that "a mistake was made" and was "corrected."  *See, e.g.,*
   *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997) (extending *Heck v. Humphrey*, 512 U.S. 477, 487
28 (1994)).

1     • The motion is **DENIED** in all other respects.  The case proceeds on a single, First

2     Amendment retaliation claim remaining against Officer Renee Galvan only.

3     DATED: April 28, 2015

4

5                                                    Jennifer A. Dorsey
                                                     United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28